CHESTER MITCHELL, JR. *vs.* WILLIAM L. STETSON.

Where a son, at the suggestion and by the agency of his father, who was insolvent, purchased and gave his notes for a lot of land with timber growing thereon; and, by an agreement between the father and son, the father was to cut off and sell the timber, and to pay for the labor and other charges, out of the proceeds, and appropriate the balance towards payment of the notes given for the pur-chase money, and to pay any remaining surplus to the son ; it was held, that trees cut and lumber sawed under this agreement were the property of the son, who might maintain trespass against an officer for attaching the same as the pro-perty of the father, and recover damages to the full value of the property at the time of the trespass.

THIS was an action of trespass to recover the value of one hundred and thirty logs, one thousand feet of spruce boards, one plough, one stove, one grindstone, one crank and one wheelbarrow, alleged to be the property of the plaintiff.

The defendant, in his specification of defence, admitted the taking of the articles, but justified the same, on the ground, that he, as deputy sheriff, took them as the property of Ches-ter Mitchell, senior, on a writ of attachment against him, and afterwards sold them on execution, and appropriated the pro-ceeds in part satisfaction thereof.

At the trial in the court of common pleas, before *Byington*, J., the plaintiff admitted these facts, but contended, that the articles taken were not the property of Chester Mitchell,

senior, and could not be taken for his debt; and he called Chester Mitchell, senior, as a witness, who testified that the property in question belonged to the plaintiff; that he was himself poor, had taken the benefit of the insolvent law, and had been in poor health; that he knew of the lot, from which the lumber was taken, being for sale, and made an offer for the same, telling the owner that he had not the means of paying, but would find a purchaser; that the plaintiff agreed to buy it, if the witness could get it for the price offered; that the witness negotiated a sale to the plaintiff, who bought it, took a deed of it, and gave his notes in payment; that the plaintiff told the witness to go on and get off all he could from the lot, to pay for it from the proceeds, besides paying for the labor, and to pay the surplus, if any thing, to the plaintiff, and to do what he could towards getting a living; that the plaintiff furnished some provisions for the men who worked getting off the timber; that the witness went upon the lot and peeled some bark and got off logs; that the logs attached were at the saw mill at the time, and were the first lot of logs got off from the lot; that he drew the logs to mill and worked as much as his health would allow, which was not much; that he sold some bark and lumber, and took notes payable to himself and collected them; that the sum of sixty two dollars, which he received on a note for bark thus sold, he paid on a note given and due from the plaintiff; that the sales of bark and lumber were in his own name; that he had leave to exchange the boards and lumber for things which he wanted for his house; and that his own understanding was, that things so obtained were to be his son's property. The plough sued for, he bought with boards which came from the lot, and he afterwards told his son of it, who said it was all right. He bought the stove also with boards from the lot, and afterwards informed his son of it. The stove was placed in his parlor. The grindstone, crank and wheelbarrow, he bid off at auction, but he had not paid for them and did not know that his son had. It was also proved, that the sawing of the lumber was charged to the father; and that the father sold timber that came from this lot to one Bartlett, who paid for it in work, in getting timber off the lot.

The defendant contended that this evidence showed, that there was such an intermingling of the property of the plain tiff and his father, as rendered it impossible for the defendant, when making the attachment, to separate and distinguish the property of the father from that of the son, and that this in termingling was by the permission of the plaintiff; and he contended, that this action could not be maintained until the plaintiff had first pointed out his property and made demand of it.   But the judge ruled otherwise, and instructed the jury that the evidence did not show title in the plaintiff to the grindstone, crank and wheelbarrow, and that he was not entitled to recover for them; that in regard to the other pro perty, although the timber belonged to the plaintiff, before it was cut, while standing in his lot, yet if he authorized his father to get off the timber, and appropriate it to his own use, and he did so, then the plaintiff could not recover, and that this was a question of fact for the jury to decide; and, if he sold timber, and with it bought things, and appropriated them to his own use by permission of the plaintiff, he could not recover for things, so bought and appropriated; that the ques tion for them to decide was, in whom was the property, at the time it was taken by the defendant.   Having been the property of the plaintiff when standing on the lot, had it, or any part of it become the property of the father? if it had, the plaintiff could not recover for such as had so become his father's property; that if all the property belonged to the plaintiff, he would be entitled to recover its value, though its value had been increased by the labor of the father.

The defendant then asked the judge to instruct the jury, that if the father and son were tenants in common of the property, the latter could only recover his interest in it.   The judge remarked that he was not aware that the evidence showed a tenancy in common; but did then instruct the jury, that if they should so find, they would give him damages cnly to the amount of his interest in the property.

The jury returned a verdict for the plaintiff; and the de fendant excepted to the foregoing rulings and instructions.

*W. Porter*, for the defendant.

37*

*E. Merwin*, for the plaintiff.

BIGELOW, J.   We can see nothing in the facts of this case to warrant the assumption, that any part of the property, for the taking of which damages were given by the jury, vested in Chester Mitchell, senior.   The plaintiff was the owner of the land from which the lumber was taken, having purchased and paid for it by his own promissory notes.   By an agree·ment between him and his father, the latter was to cut off and sell the timber standing on the land, and out of the pro·ceeds to pay for the labor and other charges attendant thereon, and to appropriate the balance towards payment of the notes given for the purchase money.   If any surplus was left, it was to be paid over to the plaintiff.   This is the common case of principal and agent.   No property was vested in the father by the arrangement between him and his son.   The former was to be paid out of the property of the principal for his own labor and the charges of executing the agency, but he acquired no title to the property, which was intrusted to his care.   The right to deduct from the proceeds of the pro·perty, when sold, a sum sufficient to pay for the labor and expense laid out in preparing it for market, was only one mode of paying a debt, for which the plaintiff was liable as principal; but it did not change the legal relation of the par·ties, or vest any title to the lumber in the agent, as against third persons.   The cases are numerous in the books, in which it has been held, that materials, delivered to a person for the purpose of being manufactured, still continue the property of the original owner, although their nature and character may be essentially changed by the process, and their value largely increased.   In such cases, there is no contract of sale, and no act done which divests the property of the original owner. It is merely a contract, between a principal and an agent, or employer and employee, the former having the title to the property, and the latter a claim for compensation for his labor.   The mode in which this compensation is paid, whether by a right to sell on the part of the agent and to deduct it from the proceeds, or by a direct payment of it by the princi·pal, is quite immaterial.   In either case, the title to the pro·

perty remains unchanged, and still continues in the original owner; were it otherwise, it would be difficult to carry on the common transactions of business without an endless confusion in the rights of property. *Eaton* v. *Lynde*, 15 Mass. 242; *Stevens* v. *Briggs*, 5 Pick. 177.

It follows, as a necessary consequence of these principles, that the entire right of property was in the plaintiff, and, as against the defendant, a right to its immediate possession. He can therefore recover in this action its full value at the time of the trespass. The labor and expense bestowed upon the property, although they may have added to its value, are merely the incidents which follow the right of property. They cannot be separated from it, and necessarily therefore accrue to the owner. The general rule of law is, that the owner of property, whether it be movable or immovable, has the right to that which is united to it by accession or adjunction; a trespasser can acquire no right in property on the principle of accession, but the owner may reclaim it, whatever alteration of form it may have undergone. Mo. 20, pl. 67; 2 Kent Com. 362; *Betts* v. *Lee*, 5 Johns. 348; *Peirce* v. *Goddard*, 22 Pick. 561. Besides; the labor and expense bestowed on the property would constitute a valid claim against the plaintiff, if from any cause payment should not be realized out of the proceeds of the sale. The fallacy of the argument on the part of the defendant consists in regarding the services of the father in cutting and drawing the lumber as creating in him a right of property to the lumber itself. But there was no agreement to that effect between the parties, and the law implies no such contract from the facts reported in the bill of exceptions.

Perhaps the most conclusive test as to the right of the plaintiff to recover the full value of the property at the time of the trespass may be found in the consideration, that, upon the evidence in this case, it is clear that he could have maintained replevin for the property taken by the defendant. He would then have received and held the specific articles in the state in which they were when attached by the defendant, with all the additions and increase of value, which had accrued by

the labor of the father. See *Martin* v. *Porter*, 5 Mees. & Welsb. 352. The father having no property in the boards or lumber taken by the defendant, it follows that there was no such intermingling of property as would justify the officer in attaching the goods of the plaintiff. The few articles which really belonged to the father, being of a wholly different kind from those which were the property of the plaintiff, and, so far as the case shows, entirely separated therefrom, there is no ground for sustaining the exceptions on this point.

We are wholly unable to perceive any reason for supposing that the jury were misled by the other instructions of the court, to which exception is taken. The first was a mere statement of a familiar principle of law, which could not have been misunderstood or misapplied by the jury; and the second was a remark which the learned judge was fully warranted in making by the facts proved in the case. *Exceptions overruled.*